The following opinion was delivered in the supreme court:

By the Court,

Nelson,.C. J.

The remainders to the children of Mary were clearly not vested, but were contingent, as they went to the survivor : who this might be was altogether uncertain. The counsel for the defendant • concedes the case to the plaintiff, unless he can maintain that the clause of survivorship referred to the event of the death of the testator. Such a con’elusion would conflict with the plain intent of the will. The premises were given to Mary for life, and after her decease to the three daughters, the *93 survivors or survivor of them—clearly referring to the event of her death. The plaintiff is entitled to judgment.
Judgment being accordingly entered, the defendant sued out a writ of error, removing the record into this court, where the case was argued by
W. W. Van Wagenen, for the plaintiff in error.
J. W. Gerard, for the defendant in error.
*Foints presented and argued on the part of the plaintiff in [ *121 ] error :
I. The words from and after her death, in this devise, refer simply to the time when the enjoyment of the estate in remainder is to commence, and cannot affect the nature of the estate. They appoint and fix the time when the remainder is to vest in possession, and not in interest. 2 Cruise, 295 ; 1 Fearne on Remainders, 368.
H. The words or survivors or survivor of them, being thus uncontrolled and unexplained, mean the longest livers or longest liver of them—an absolute and indefinite survivorship. But upon this interpretation, the devise being to the three children, or to the two longest livers, or to the longest liver, without fixing the period for the alternative, it is altogether uncertain, from the particular devise alone, what estate was intended to be given.
III. The general intention of the testator is then to be gathered from the scope of the whole will, and such a construction is to be put upon the particular devise as will effectuate this intention. 6 Cruise, 157, 158. The manifest intention of the testator here is, to provide first for Mary, next for her children, and afterwards for their descendants.
IV. The words survivors, ¿-c., relate to the death of the testator. Doe v. Sparrow, 18 East, 358 ; Cambridge v. Roos, 8 Vesey, 11. The limitation of the premises in Greorge-street, to Susan, Jane, and Betsey, after the death of their mother, must have taken effect as a vested remainder on the death of the testator, and the words “ to the survivors or survivor of them" &c., must refer to the testator’s death. Rose v. Hill, 3 Burr, 1881; Garland v. Thomas, 4 B. & P. 82. Susan, Jane, and Betsey, therefore, took vested remainders in that property, as tenants in common; and the estates of those deceased go by inheritance to their heirs—consequently, Betsey took one-half, and each of the nephews a quarter of the premises.
V. ' The same effect, confirming the estate to the issue of those deceased, would be produced—first, by supplying before the words or to the survivors, ¿•e., the words if either should die without issue, then. Jackson v. Strang, 1 Hall 22 ; *Spelding v. Spelding, Cro. Car. 184, [ *122 J cited and approved by Lord Ellenborough, in Doe v. Micklem, *94 6 East, 489. Or, secondly, by rejecting the words “ or to the survivors or survivor of them,” “ or her,” as creating uncertainty. Or, thirdly, by reading and in place of or—thus creating a vested remainder in joint tenancy in fee at common law, but under the statute, a tenancy in common. Jackson v. Blansham, 6 Johns. R. 54; 4 Kent's Commentaries 361; Act to abolish Entails, & c., passed 23d Feb 1786.
VI. In order to make this a contingent remainder dependent upon a survivorship of Mary, it would be necessary to supply, after the words, “ survivors of them,” the words at the time oe heb death. Doe v. Provoost, 4 Johns. R. 65. But the law will always prefer such a construction of a devise as will create a vested rather than a contingent remainder; and the words of the particular devise being ambiguous, and their true interpretation uncertain, the court will require the clearest and most unquestionable evidence of such being the intention of the testator, before they will so interpret a will as to give the estate to the surviving children, to the prejudice of the issue of such as may have died. The burthen of proof to make out this intention, rests upon the defendant in error. Doe v. Micklem, 6 East. 489.

Points presented and argued on the párt of the defendant in error:

I. The remainder to Susan, Jane, and Betsey, the children of Mary, was contingent, because at the death of the testator it was unknown, which, or whether any of them, would survive their mother ; and the plaintiff being the only child surviving, on the death of her mother, took the whole estate in fee., Doe v. Provoost, 4 Johns. 62. Hawley v. James, 16 Wend. 237-8-9. Jackson v. Waldron, 13 Wend. 178, 218, 219, 220. Tier v. Pennell, 1 Edward Ch. R. 354. Jackson v. Thompson, 6 Cowen, 178. Wilkes v. Lyon, 2 Cowen, 333. 2 Cruise's Digest, 261, § 13.
[ *123 ] II. The intention of the testator to limit the estate to the survivors or survivor of the three children of Mary, living at the death of Mary, is so clearly expressed in terms as to leave no room for construe-í tion, and distinguishes this case from Doe v. Provoost, 3 Johns. R. 60, and the other cases there cited.
HI. The will appears to have been drawn by one acquainted with the use of technical terms, and who knew the meaning of the language used.
After advisement, the following opinions were delivered :
By the President of the Senate.
As I shall feel it my duty in this case to vote for a reversal of the judgment of the court below, it is due in respect to that court, as well as to this, that I should give my reasons for such vote. I am the more inclined to do this, because I consider the rule of *95 law to be adopted in this case as one of great general importance and in this court new.
Upon the facts found by the special verdict, the plaintiff below, on the termination of the life estate of her mother, Mary, claimed the whole estate in fee, as the last survivor of those interested in remainder : insisting that the remainder was contingent, and that the survivorship referred to the death of the tenant for life. On the contrary, the defendant below, the present plaintiff in error, claijmed possession of an undivided moiety of the premises: one-half thereof, that is one-quarter of the whole, as heir at law of his deceased son, Isaac Henry Moore; and the other half thereof, or quarter of the whole, by virtue of a lease thereof from his other son, George William Moore: insisting that the survivorship refers to the death of the testator, and not to the death of the tenant for life ; that the remainders, therefore, were vested, and not contingent; and that they did actually vest on the death of the testator, so that Jane, at her death, had a vested estate in remainder in one equal undivided moiety of the whole premises, which, at her death, descended to her two sons, Isaac Henry Moore, and George William Moore, as her heirs at law.
*The supreme court sustained the claim of the plaintiff below, [ *124 ] and on the grounds above stated. The main questions, therefore, arising in this case are: 1. Does the survivorship in this case refer to the death of the testator, or to that of the tenant for life ? And 2. Were the remainders in this case vested or contingent ? The decision of the first of these questions will govern the other ; indeed, the latter will necessarily follow as a corollary of the former. To what period, then, does the survivorship in this case refer ?
In considering this question it is important to keep constantly in view the fact that this case arises under a will, and its decision must be governed by the interpretation to be given to that will. It is a well settled rule of law, recognized as well by elementary writers as in the solemn adjudications of courts of justice, that, in the construction of wills, more than any other instrument, the intention of the testator is. to be regarded, and is to govern. This Lord Coke calls “ the polar star to guide judges in their determination.” The reasons for this are many and obvious. Wills are often made and executed by those who are unlearned and unskilled in the law ; who are, at the moment, without counsel; and often too when they are in extremis. The courts, therefore, in giving effect to wills, have ever treated them with great indulgence, endeavouring, in all cases, to carry out the intentions of the testator, so far as the same could be ascertained, and could be executed without violating the established rules of law, and the settled policy of the government. In conformity with this principle our own commentator, Kent, after referring to, and recognizing the English rules of construction, says, *96 “ The intention of the testator is the first and great object of inquiry ; and to this object technical rules are to a certain extent, made subservient.” But with reference to a just limitation of this rule, he adds, “ To allow the testator to interfere with the established rules of law, would be to permit every man to make a law for himself, and to disturb the mete and bounds of property. So too in the supreme court of the United States, in the case of Inglis vs. The Sailor's Snug Harbor, 3 Peters' U. S. R. 117, 18, the English rules of construction of wills are declared and enforced [ *125 ] *to the extent that “ the intention of the testator is to be sustained, if it can be done lawfully and consistently ; and also that a general intent in a will is to be carried into effect at the expense of any particular intent, provided such general intent be consistent with the rules of law; for when there are conflicting intents, that which is the most important must prevail.”
Recognizing these general principles as sound, and keeping them steadily in view, let us next inquire what was the general intent of the testator, so far as the parties in this case are concerned. This was evidently: 1st. To manumit his slaves ; and 2d. To prevent their becoming chargeable to the city of New-York for their maintenance, by providing abundant means for their support. By referring to the clause of the will next preceding the devise in question, it will be seen that there is a bequest therein made to Mary, the mother, during her natural life ; and after her decease, to “ the heirs of her body in equal proportions.” This is so far carrying out the above supposed general intent of the testator. But if we apply to the devise in question, the rule of interpretation adopted by the court below, and consider the remainders created in the devise as contingent and not vested, and refer the survivorship to the death of the mother, Mary, the tenant for life, instead of that of the testator, we then give exclusively to the last survivor, Betsey the whole provision, which would seem to have been intended by the testator for Mary and all her heirs; and leave without provision, so far. as the property embraced in this devise is concerned, the two children of Jane, who died before the termination of the life estate of her mother Mary. Tins would not only defeat, thus far, the evident general intention of the testator, but would be, in itself, inequitable. The sense of the courts upon this last point has been often and strongly expressed. Our own supreme court, in the case of Wimple v. Fonda and Fonda, 2 John. R. 268, use the strong language that “ it is unnatural to suppose the testator meant to disinherit the posterity of those dying first.” So in the case of Haner's Lessee v. Sheetz, 2 Binney's R. 532, Ch. J. Tilghman said, “ it [ *126 ] is very natural that a man should *give his son an estate in fee, and yet provide that it should go to a third person, in case his son died without issue, and before the age at which the law permitted him to dis *97 pose of it either by contract or devise ; but that he should give him a fee simple, and then deprive his children of it because he happened to die before 21, is altogether unnatural and improbable.” So too in the English courts, in the case of Garland vs. Thomas, 4 Bos. & Pull. 82. Sir James Mansfield, Oh. J. says, “ before we impute such an intention to the testator we ought to see it so clearly expressed as not to admit of a doubt.” So also in the case of Blisset vs. Cranwell, 1 Salk. 226, cited in. 1 Lord Raymond, 624. Lord Ch. J. Holt, and Justices ISTevill and Rockeby, put their judgment expressly upon the ground, that “ the testator intended to provide not only for his two sons, but their posterity.” The clause in question of the will in that case, gave the property to the two sons, “ their heirs and the longer liver of them ;” an expression much stronger than that in the devise in this case. But if, instead of applying to the devise in question the harsh rule of interpretation adopted by the court below, we suppose, and it would seem to be fair to do so, that the general intent of the testator, so benevolent and just, manifested in the bequest next preceding the devise in question, also dictated and ran through that devise, this would relieve the subject of all difficulty, and furnish a rule of interpretation at once easy and equitable.
Let us next see whether this rule be consistent with the well established and generally acknowledged principles of law.
It is a well settled rule of law, recognized in our own state, that “ courts will never construe a limitation into an executory devise, when it can take effect as a remainder; nor a remainder to be contingent, when it can be taken to be vested.” It is true, that before the abolition of feudad tenures / in England, the courts of law in that country did favor joint tenancies over tenancies in common, as being more in harmony with the spirit and general policy of that period in relation to estates. But since the destruction of such tenures, by the statute of tenures, passed in the 12th of Charles the *2d, the tendency of the courts both of law and equity, [ *127 ] even in England, has been strongly in favor of tenancies in common over joint tenancies. Much more so should this be the case in our own state, where since the 12th of July, 1782, joint tenancies have been abolished in all cases, except those expressly declared by deed or will to be such, and also as to executors and trustees. The distinctive feature of joint tenancy, and that which is most inconsistent with the policy of our law, is the jus accrescendi, or right of survivorship. This the courts of England have declared to be against equity, and it is not, therefore, now favored there in the courts either of law or equity. But it is particularly inconsistent with the policy of our law, and the true spirit and character of our institutions. It favors the accumulation, in the hands of a single individual, of estates, which it is the policy and object of our law to divide by equal and extensive
*98 distribution. This, therefore, should not be favored. It should never be extended beyond the unquestionable law, or clear necessity of the case, especially to the prejudice of heirs.
Is there, then, any such unquestionable law or clear necessity for the application of this principle in the present case ? The solution of this question involves the decision of the main point above stated ; viz. “ to what period does a general clause of survivorship refer ?” This question has arisen, and been adjudicated much less frequently in the courts of this country, than in those of England. In the latter, the decisions from the earliest period down to and including the case of Edwards vs. Symons, decided in 1815, and reported in 6 Taunt. 214, have established and uniformly sustained, in cases of real estate, the rule of referring survivorship to the death of the testator. The rule in relation to personal property, in the courts of law would seem, on a slight examination, not to have been so uniform: although even in relation to personal property the courts of law did early in most cases, and the courts of equity generally, adopt the same rule, which was so uniformly applied to cases of real estate. But in some more recent decisions in cases of personal property, there has been supposed, but I think on insuffi- £ *128 j cient reason, to have been a greater tendency *in the courts of law to refer survivorship to the death of the tenant for life, or the time of distribution. On a careful examination, it will be found that in most of the cases of personal property, where such has been the decision, or such has appeared to be the tendency of the courts, there has been a special intention of the testator manifest upon the face of the will itself, to refer the survivorship to that period. These cases, therefore, do not, in any degree, impugn the general rule. There have been, however, a very few cases where either under a mistake as to the authorities upon this subject, or from peculiar views of individual judges, the general rule has been somewhat departed from, but not to an extent sufficient, in opposition to the great weight of authority to the contrary, to change the rule. Even in relation to real estate, a loose dictum, of Lord Alvanly, in Russell vs. Long, 4 Ves. 551 Seems so far to have misled Sir John Leach, in Cripps vs. Wolcott, 4 Madd. Ch. R. 11; and Sir William Grant in Brown vs. Bigg, 7 Vesey 280, as to occasion some apparent discrepancy of decision, and consequent unsettling of the rule theretofore adopted, and so uniformly observed in cases of real estate. Sir William Grant, however, in the subsequent case of Shergold vs. Boone, 13 Vesey 375, corrected the hasty expression used by him to counsel, while arguing the case of Brown vs. Bigg ; and, as the result of his subsequent and more deliberate examination and reflection, stated the law in the ■following clear and emphatic manner: “ that in regard to the effect of a general clause of survivorship he had found the result of the authorities contrary to what had fallen from the court, during the argument of Brown *99 vs. Bigg, founded on what Lord Alvanly had said in one of the cases; and that, in a great majority of them, the survivorship had been referred to the period of the testator’s death.”
The only direct authority, therefore, sustaining a contrary doctrine, is that of Sir John Leach in Cripps vs. Wolcott, decided in 1819. The general rule there laid down, by the vice chancellor, is, “ That words of survivorship are to be referred to the period of division and enjoyment, if there be no special intent to the contrary; and that, if a previous life estate is given, the period of division being the death of the *ten- [ *129 ] arit for life, the survivors at such death will take the whole legacy.” This rule was put upon the authority of the cases of Russell vs. Long, Daniel vs. Daniel, and Jenour vs. Jenour. It is believed that these cases, upon a careful examination, will be found not to sustain the rule thus laid down by Sir John Leach.
In the case of Russell vs. Long, the three sisters among whom and the survivor or survivors of them, the legacy was to be divided after the death of the tenant for life, who was their mother, all survived both the testator and tenant for life. It was upon the subsequent death of one of the sisters that the only question in the case arose, viz : whether the sisters were joint tenants, or tenants in common. The chancellor, on the authority of Stringer vs. Phillips, decided that upon the death of Christiana, one of the sisters, her one-third part passed by her will. The principle of this decision, therefore, does not sustain the rule of Sir John Leach: but it was in this case that Lord Alvanly uttered the dictum, above referred to, and which, rather than -the decision of the court in the case, seems to have influenced the opinions of Sir John Leach, and led him to lay down the general rule,in question : “ If all the sisters had not survived their mother, possibly I might have adopted the construction that survivorship related to the death of the mother, and not of the testator; for I think that construction is not to be adopted, if any other can be.” The bare possibility of what might, in the case supposed, have been the opinion of his lordship, furnishes certainly but a very slight and uncertain ground upon which to rest a general rule of law, so important as the one in question; more especially so when this same Lord Alvanly, as Sir Pepper Arden has himself said in Maberly vs. Strode, that “ the blind words with benefit of survivorship, mean the survivors at the death of the testator.” In the case of Daniel vs. Daniel, 6 Vesey 297, there was, on the face of the will itself a manifest intention of the testator to refer the survivorship to the death of the tenant for life. This intent was indicated by the provisions of the will, and the expressions in which those provisions were made. This was so understood and strongly relied on by *Sir William Grant in his construction of the will. [ *130 ] *100 This case, therefore, instead of furnishing an authority in support of either rule would constitute an exception equally to both. In the caso of Jenour vs. Jenour, 10 Ves. 562, although the will there in question contained two clauses upon which Lord Eldon intimated an opinion, without pronouncing any decision, the decree related to another clause in the will, upon which alone the question before the court arose. In that clause, the testator gave ¿692 long bank annuities, to be equally divided between his two nephews, and to go to the survivor of them after the death of his brother and sister. The question was, whether they took as joint tenants or as tenants in common ? Lord Eldon, on appeal, decided in favor of the latter; thus far affirming the decree of Sir Wm. Grant, master of the rolls. This case, therefore, furnishes no authority for the rule of Sir John Leach. The several other cases, such ás Brograve v. Winder, Hoghton v. Whitgreaves, and Newton v. Ayscaugh, which have been sometimes cited to sustain this rule, like the case of Daniel v. Daniel, presented an intent of the testator clearly manifested to refer the survivorship to the death of the tenant for life, or the time of division or distribution. These, therefore, are not within the rule, and of course cannot be urged as authorities in support of it. In the case of Borgrave v. Winder, however, Lord Loughborough admitted it to be generally true that the words “ survivors or survivor, or surviving,” after a previous estate, would not prevent the vesting of the estate (in remainder) at the death of the testator.
There is another case sometimes cited as an authority in support of this rule, viz: Browne v. Lord Kenyon, 3 Madd. Ch. R. 410. But in this case, if I do not greatly mistake its principle, Sir John Leach would seem to impugn his own rule. It was the case of a bequest, after a life estate, to the testator’s two brothers in equal shares, or the whole to the survivor. Sir John Leach was of opinion that the testator intended that, if one only survived the tenant for life, he should take the whole ; that it was a vested gift to the two, as tenants in common, subject to be divested if one alone sur- [ *131 ] vived ; but as both brothers died in the life time of the *tenant for life, the estate was never divested, and the money was divisible between the reprerentatives of the two brothers. Here the vice chancellor supposes that there was a manifest intention in the testator that the survivor of the two brothers should take the whole legacy ; and yet he was of opinion that the estate vested in both so as to be transmissible to their legal representatives. This latter could only be by referring the survivorship to some other period than the death of the tenant for life : for if it be to that only that is to be referred according to the rule in Cripps v. Wolcott, then the remainder would not have vested either in interest or possession until that period; and if both brothers had survived, they would have taken the legacy in equal proportions. If one alone of them had survived, he *101 would, have taken the whole legacy; but if neither of them had survived, as was the case, it is not readily seen why the remainders would not have been lost, there being no person in esse to take at the time of their vesting in interest and possession. But the vice chancellor was of opinion that the remainders did vest so as to pass to the legal representatives of the deceased legatees : thus, as it seems to me, impugning his own general rule. The idea that this was “ a vested gift to the two brothers, as tenants in common, subject to be divested if one alone survived,” is certainly very ingenious, and was perhaps necessary in order to render the decision of the vice chancellor in this case even apparently consistent with his general rule in Oripps v. Wolcott; but it will, I think, hardly be received as sound law in such a case as this. I do not deny that a remainder once vested may be subsequently divested ; but Mr. Cruise has, I think, in a note to the eighty-sixth section of chapter first of title sixteenth of his Digest, laid down the true rule in such case, which is, that “ a vested remainder will never be divested unless there be a special provision, or a clear intention to be collected from the language of the instrument.” But there is no such “ special provision or clear intention” in the case in question. The principle, therefore, does not apply. The remainders in that case, then, were either vested, or they were not. If the former, then it is necessary to refer the survivorship to some other *period than that of the death of the ten- [ *132 ] ant for life, viz : that of the testator ; and in that case Sir John Leach’s rule fails. If his rule be adopted, and we refer the survivorship to the death of the tenant for life, then, as before suggested, I apprehend the remainders would have been lost, there being, at that time, no person in esse to take; and that, consequently so far as the subject of this bequest was concerned, an intestatcy would have been occasioned.
The rule of Sir John Leach, then, does not appear to be sustained by the authorities cited in its support; and unsustained by authority, it certainly cannot be, in itself, of'sufficient force to counterbalance the great weight of the numerous, well established, and long acknowledged authorities, which have recognized and observed a different rule : viz. that of referring a general clause of survivorship to the period of the death of the testator, unless there is manifest a special intent to the contrary. These authorities commence with
1. The ease of Boraston, decided in 29th of Elizabeth, (1587) and reported in 3 R. 19. It was there held by the whole court that the term “ then and when” showed when the estate in remainder should come into possession, and not when it should vest in interest. That this latter was at the time of the death of the testator.
2. In Trotter v. Williams, Prec. in Ch. 78, and 2 Equity Cases, Ab. 344. The court decided that the words “ shall go to such of them as shall *102 be living,” must refer to a certain time; and that.is, when the legacies become payable,, which is the death of the testator; so that the death of any of the legatees after would not carry it to the survivors.
3. The case of Lord Bindon v. The Earl of Suffolk, 4 Bro. P. C. 574, which was a case of personal property, and was decided in 1707 by Lord Chancellor Cowper; and although his decision was afterwards reversed in the House of Lords, it has ever been considered and followed as sound law. Lord Hardwicke, in Hawes v. Hawes, says : “ I think Lord Cowper’s reasoning in Bindon v. Suffolk very right; that the surviving must be applied to some particular time, and not to a dying indefinitely.” Lord [ *133 ] Chancellor Rosslyn, in Roebuck v. *Deane, said: “ I cannot conceive upon what ground Lord Cowper’s decree, in Bindon v. Suffolk, was reversed.” Sir Pepper Arden, master of the rolls, in Maberly v. Strode, says : “ Bindon v. Suffolk seems, as the Lord Chancellor said, to have had a very odd fate in the House of Lords. The Lord Chancellor intimates what I do not wonder at—his doubt of the ground upon which Lord Cowper’s decree was reversed. He says he cannot conceive upon what ground. Neither can I.” Sir James Mansfield, Ch. Jus. of the common pleas, in Garland v. Thomas, observed, that “ the decision of Lord Chancellor Cowper, in Bindon v Suffolk, had always been treated as the right decision.” “ I think the decision right; and it has been supported by the subsequent authorities referred to in Mr. Coxe’s Pere Williams, and particularly in Stringer v. Phillips.” But if, as has been said, the House of Lords found a special intent in the will in this case, that would take it out of the general rule, and their reversal of the decree of Lord Cowper, upon that ground, would not impugn the general rule.
4. The case of Barker v. Giles, 2 Pere Wms. 280, was first argued in 1725, before Lords Commissioners Gilbert and Raymond, who differing, the case was carried up to Lord Chancellor King, and was the first decided by him. On the argument, it was said, “ that joint tenancy was an odious title in equity; there being no reason, that because a man lived longest and had a better constitution, therefore he should be entitled to the whole estate.” The court decided this to be a joint tenancy for life, remainder over in severalty.
5. The case of Stringer v. Phillips, 1 Eq. C. Ab. 291, was decided at rolls in 1730. It is a leading case, and is considered of high authority. It was the case of a bequest to two sisters for life ; and after their death to five sisters, the survivors, and survivor of them. It was decided to be a tenancy in common, and not a joint tenancy; and that the words “ survivors and survivor of them” are to be understood such of them as shall be living at the testator’s death.
6. The case of Hawes v. Hawes, 3 Atk. 524, was decided by Lord *103 Hardwicke, and is mainly important as confirming Lord Cowper’s opinion in Bindon v. Suffolk.
7. *Marriott v. Townley, 1 Vesey 102, was decided in 1748, [ *134 ] and was cited as sound law by Lord Mansfield and Justice Wilmot in Rose ex. dem. Vere v. Hill.
8. Stones v. Heurtly, 1 Ves. 165, was first decided before Lord Bosslyn, as commissioner ; but afterwards in chancery by Lord Hardwicke. John Stones, the testator, had two children, John and Dinah, by his first wife ; and two, Francis and Mary, by his second wife. He directed the remainder of his estate, to which he was entitled on the death of his Aunt Mawhood to go to, and be equally divided among his three children, Dinah, Francis and Mary, and the survivor of them. The four children survived the father. Mary died an infant in the life time of Mrs. Mawhood. John died leaving Dinah his heir. Dinah died leaving the defendant, her infant son, her heir. The question was, whether the plaintiff, Francis, should take the whole estate as survivor ? Lord Chancellor Hardwicke, on the authority of Blisset v. Cranwell, held it to be a tenancy in common; and that the words “ after the death,” were not to be considered as fixing the time when the interest should vest, but merely as constituting an interest in remainder.
9. In Goodtitle, ex. dem. Hayward v. Whitby, 1 Burr. 228, Lord Mansfield confirms the case of Boraston and lays down the two following rules:
1. Whenever the whole property is devised with a particular interest given out of it, it operates by way of exception out of the absolute property.
2. When an absolute property is given, and a particular interest is given in the mean time, as until the devisee shall come of age, &c., then to him, the rule is, that that shall not operate as a condition precedent, but as a description of the time when the remainder man is to take in possession. To this purpose was Boraston’s case, where this doctrine was fully laid down and explained. Lord Mansfield cited the manuscript case of Tomkins v. Tomkins, decided in the 17th of Geo. the 2d, in chancery. To the same effect is also the case of Mansfield v. Dugard, decided in 1713, and reported in 1 Eq. C. Ab. 195.
10. ‘So also in the case of Doe ex dem. Wheedon v. Lea, 3 T. R. 41, decided in 1758, certain copyhold estates were given to T. L. and E. J., remainder to M. Lea, great nephew, “ when and so soon as” he should attain the age of 24 years. He attained 21 but died before 24 years of age. On the argument it was insisted, on the authority of Brownwoods v. Bdwards, that this was a condition precedent. But Lord Kenyon observed that the words in that case were very different. There it was, “ if he should attain the age of 21.” But the words in this case only denoted the time when the beneficial interest was to accrue. “ He cited *104 with approbation, the cases of Boraston, and Gfoodtitle v. Whitby ; and concluded that “ the words in this case could not operate as a condition precedent, but as giving an absolute interest in fee, and denoting the time when the remainder was to take effect in possession.”
11. Wilson v. Bayly, 3 Bro. P. C. (Toml. Ed.) 195, is a very strong case in point. It was a devise of real estate to two sons; and, in case of their death without issue, remainder to three daughters, the survivors or survivor of them, as tenants in common. The two sons died without issue. Two daughters died in the lifetime of the surviving son, leaving issue. The court of chancery in Ireland gave the whole estate to the surviving sister ; but the house of lords, on appeal in 1760, held that the three daughters had such an interest vested in them at the death of their father, as was transmissible to their representatives ; and that the surviving daughter was not entitled to the whole estate. They, therefore, reversed so much of the decree as gave the whole estate to the surviving sister, and affirmed the residue. This is an exceedingly strong case, and directly in point.
12. Roebuck v. Deane, 2 Vesey, Jr. 265, is also a strong case in point. It was a case of personal property, a bequest of ¿61000 in trust to pay dividends to E. R. for life ; and, after her decease, to be equally divided between five, the survivors or survivor of them. It was decided by Lord Rosslyn, in 1793, and held to be a tenancy in common; and the survivor-ship to refer to the death of the testatrix. This case was cited and approved in Halifax v. Wilson.
[ *136 ] 13. *Perry v. Woods, 3 Vesey, 204, was decided at the rolls, by Sir Pepper Arden, in 1795, and by the lord chancellor, in 1796. It was in part a case of stock bequeathed in trust for the use of A. D. for life and if she died without children, the executors were to pay the principal to W. P. and J. P., share and share alike, or to the survivor of them. Sir Pepper Arden, master of the rolls, held that the words of survivorship applied to the testator’s death, not to A. D.’s; and that although J. P. alone survived A. D., he was not entitled to the whole estate, but that the representatives of W. P. were entitled to a moiety. This case was afterwards cited and approved by Sir William Grant, master of the rolls, in Newton v. Ayscough.
14. Maberly v. Strode, 3 Vesey, 450, is a case of real estate, and a strong one. It was decided in chancery by Sir Pepper Arden, master of the rolls for the lord chancellor. In giving his opinion, he remarked, that “ to prevent intestacy is one reason why it is necessary to adopt, if possible, the construction of the word 1 survivorship,’ as applicable only to the death of the testator. The construction that ‘ the benefit of survivorship,’ was to prevent a lapse, and that the interests vested at the death of the testator, is much the most beneficial construction. I am of opinion that upon these *105 blind words the safest and soundest con.stvnjfcm'i, best warranted by the authorities, most beneficial to the parties, most likely to be that intended, is that the meaning is such as shall survive the testator; but that it is not meant that it should remain in contingency, and vest only in such as should happen to survive the son, with the chance of the whole being lost, and a total intestacy occasioned.”
15. Brown v. Bigg, 7 Vesey, 280, was decided at the rolls, by Sir Wm. Grant, in 1801, and by Lord Chancellor Eldon, in 1802. This case, notwithstanding the dictum of Sit1 Wm. Grant during its argument, but which, as has been before seen, he afterwards corrected in Shergold v. Boome, is a strong case in point.
16. Edwards v. Symons, 6 Taunt. 214, was decided in 1815, in the common pleas, by Lord Ch. Just. Gibbs, and Justices Heath, Chambre and Dallas. It was a case of the *devise of real estate to [ *137 ] trustees, to receive and applyrents until the youngest child, Elizabeth, should attain the age of 21 years; and then to the testator’s six children, naming them, and to the survivors and survivor of them, their heirs and assigns forever, as tenants in common, and not as joint tenants. The testator died seized of the estates devised, leaving surviving him four of the children named in his will, and a daughter named in a codicil thereto; two of the sons having died in the lifetime of the testator. Thomas L.:c-. diElizabeth attained 21 years ; and the question was whether Tlnunaa han a vested estate in one-fifth of the premises ? It was decided that the survivorship referred to the death of the testator ; that the children took vested remainders ; and that Thomas consequently had a vested estate in one-fifth of the premises, which, at his death, passed to his representatives.
17. Doe, ex dem. Long v. Prigg, 8 Barn. & Cress. 231, was decided in the common pleas, in 1828. It was a case of the devise of real estate to a class. The devise was to the testator’s mother, for life ; after the death of the mother, to his wife for life ; “ and from and after the decease of my mother and wife,” to the surviving children of W. J. and J. W. The testator died seized, leaving hipa surviving his mother, wife, six children of W. J. and one of J. W. The daughter of J. W. died in 1803, leaving the lessor of the plaintiff her heir at law. The wife died in 1810, leaving surviving her, four of the children of W. J. Justice Bailey, in delivering the opinion of the court, cited and approved the eases of Roebuck v. Beane and Perry v. Woods, and remarked, that “ The law inclines to such a construction as will tend to vest a remainder, unless a contrary intention appears; because contingent remainders are in the power of the particular tenant, and may be destroyed ; and it is more likely the testator should have intended that the limitations he made should be secure, than that they should be liable to be defeated.” He further remarked, that “ The testator’s death is, in *106 this case, so much the more rational period, so much the more £ *138 ] likely to have *been intended, and falling as it does, with the rule of law, vesting estates as soon as they may, instead of leaving them contingent.” On counsel referring, in the course of the argument, to the case of Hoghton v. Whitgreaves, Justice Holroyd remarked, “ that the estate in that case was to be converted from real to personal, before it was to be divided.” That was not to be done until the death of the tenant for life.
18. Rose, ex dem. Vere v. Hill, 3 Burr. 1881, was decided in 1766, in the king’s bench, by Lord Chief Justice Mansfield, Justices Wilmot and. Yates. It was a device of real estate to the testator’s widow for life, “ and from and after her decease,” remainder to his children, Anne, Thomas, Mary, William, and Nathaniel, the survivors and survior of them, and the executors and administrators of such survivor, “ share and share alike, as tenants in common, and not as joint tenants.” Anne married and died without issue ; Mary died unmarried; the widow died ; William died intestate, and was never married. Thomas died, leaving Nathaniel, the only survivor of the children, his heir at law. Lord Mansfield stopped counsel from replying, as the case was clear. The court were unanimous that it was a tenancy in common in fee, and that the words “ survivors and survivor,” related to the death of the testator. Lord Mansfield remarked, that by survivorship the testator merely intended to prevent a lapse in his life time. He recognized as law, the case of Stringer v. Phillips. Justice Wilmot concurred, that “ survivors and survivor” were inserted merely to prevent a lapse. That the testator meant his children to be all equal, and if one only or more should survive the rest, at the time of his death, the clause meant that the share or shares of such survivor or survivors should go to them and their representatives ; but he could never mean to exclude the children of any of his children who should leave any. Justice Yates, who had tried the cause, concurred, remarking, that the testator’s intention was as plain as can he. He cited Blisset v. Cranwell, and Stringer v. Phillips. Lord Mansfield and Justice Wilmot cited also Hawes v. Hawes, Marriot v. Townley, £ *139 ] and Stones v. Heartley. It will be perceived that the *expression in the will in this, as well as the last preceding case, is almost identical with that of the will in the case now before this court. In Doe v. Prigg, the expression was, “ From and after the decease of my mother and wifein Rose v. Hill it was, From and after her deceaseand in the case now before the court it is, “ From and after her death.” It should also be borne in mind, that the effect in this case of our statute, in relation to joint tenancies is precisely the same as if there had' been added to the devise the words, “ as tenants in common, and not as joint tenants for the nature of the tenure not being expressed, the statute fixes it as a ten *107 ancy in common. These two cases are also cases of real estate. As well, therefore, from the subject, as from the phraseology of the devise, they are cases directly in point, and very strong.
These comprise the great body of English authorities upon this subject; and I cannot but think that, in opposition to the opinion of Sir John Leach, in Qripps v. Wolcott, they establish most conclusively the general rule, “ That survivorship should, in all eases, if there he no special intent manifest to the contrary, he referred to the period of the death of the testator
This rule was early recognized and adopted in tbe state of South Carolina, and particularly in the case of Drayton v. Drayton, decided in 1793, by Chancellors Huston, Mathews and Rutledge, and reported in 1 Dessausure 324. That was a case of real and personal estate. The devise was to the testator’s youngest son, John, and if he died under age and without lawful issne, then the estates to be sold, and the money to be equally divided among his four surviving sons, William Henry, Charles, Glen, and Thomas. There was also a general devise and bequest of all the residue of his estate, real and personal, to the same effect. The testator died seized, leaving surviving him his said five sons and two daughters, Anne and Susannah. William Henry died, leaving two children, John and Mary, as his heirs at law. Soon after William Henry’s death, his brother John died under age, and without lawful issue. The surviving brothers purchased the right of the widow, and sold the estates "devised to John, and refus- [ *140 ] ed to allow John and Mary, the children of William Henry deceased, any part of the proceeds. Whereupon, John, for himself, and as the next friend of Mary, an infant, brought their bill in equity, insisting on their right, and praying that the defendants might be obliged to account to them for one-fourth of the estates. To this bill thé defendants demurred, on the ground that the complainants were not entitled to any part of the estates, as the father William Henry had died before John, his brother, and that the surviving brothers were entitled to the whole. The court overruled the demurrer, and the defendants were ordered to answer, on the ground that the survivorship referred to the death of the testator; and therefore, that the devisees surviving at that time, took such a vested estate in remainder as was transmissible to their legal representatives ; and that the share of Wil* Ham Henry, on his dying intestate, descended to the complainant as his heirs at law. The cases of Elliot v. the Executors of Smith, and Sealy v. Laurens, decided in the court of equity of South Carolina, on the same principle, were cited as authorities in that case.
This rule has also been recently recognized and adopted by the court of appeals of Virginia, in the case of Hansford v. Elliot, decided in 1837, and reported in Leigh, 79. This is a very strong case: It is not oply interesting *108 in itself, but is particularly so for the very able review there taken by Justice Parker, of the English authorities upon the subject, both for and against the rule adopted. In this case, the testator bequeathed the residue of his whole estate, after paying his debts and funeral charges, to his wife for life, or during her widowhoodand at her death, the whole of his personal property to be equally divided among his surviving children, named Anna, John, Polly, Thomas, and Robert, and a daughter Elizabeth, afterwards born. After the execution of the will, and before the death of the testator, he had born two other children, Richard and Peter. The testator died, leaving all the above named children living. The widow-died, leaving only two of the children, Elizabeth and Peter, living. All the others had been married, and died leaving children. Justice Parker, in delivering the [ *141 ] opinion *of the court, among other things, said, “ the bequest is to the children specially named, and I cannot believe the testator meant to make a tontine among them, and if all but one died before the mother, for that one to take all, in exclusion of grand children and their decendants. This would, I believe, in ninety-nine cases out of a hundred, defeat the intention” of the testator. “ Whenever the words ‘ surviving and survivors’ are used in a will, especially by an unlearned man, inops consilii, without manifesting any special intent to the contrary, the safest and soundest construction, that most consonant to the intention of the testator, and best supported by the authorities, is to refer them to the death of the testator, and not to give the whole estate to such legatee as happens to survive the tenant for life ; or if none survive, to declare a total intestacy.” The decree was entered accordingly.
I cannot but concur most fully in these strong remarks of Justice Parker. They do, indeed, but reiterate the sentiments of the learned English judges in several of the cases already examined, and should, I think, be conclusive upon the question now before this court.
But it may perhaps be said that inasmuch as the matter in hand, is in this court, res integra, and as we are now to settle the rule of law for the first time here, we are at liberty to adopt such rule as we may deem wisest and best; and that, independent of the strong authorities to the contrary, the rule laid down by Sir John Leach, in Cripps v. Wolcott, in conformity with the suggestion of Lord Alvanly, in Russell v. Long, would be the most consistent with reason, and therefore best. Two answers may be readily given to this: In the first place it must be conceded that in 1796, the date of the will in this case, the rule of law referring survivorship to the death of the testator in cases of real estate, had been established and recognized in a uniform series of decisions from the earliest times ‘ down to the period in question. Words of survivorship, therefore, had, under those decisions, acquired a precise and technical meaning; and it is the legal presumption, *109 as it is that of common sense, that the testator in this case, in preparing, or in directing to be prepared, and in ^executing his [ *142 ] will, did so with reference as well to this established technical meaning of the words he used, as to the provisions of the statute of 1782, which were then, as they are now, in full force, being incorporated in the Revised Statutes. How if, in order to establish what may be imagined to be a better rule, but which I by no means admit to be so, we depart from this precise and technical meaning of the words of survivorship used in this will, shall we not probably, nay shall we not certainly, defeat the intentions of the testator, and violate the rights of the parties under the will ? And would not this be the case in relation to every will now in existence, and yet to be executed ? What was said by Chief Justice Kent, in Jackson v. JBlanshan, 6 Johns. It. 54, is peculiarly applicable to this case, viz : “ It is important that, when a question of this kind has become once settled, it should not be disturbed ; for it grows into a landmark of property.” This is, perhaps, more than any other, a case for the application and strict observance of the rule of “ stare decisis et non quieta movers.”
But in the second place, even if no rule upon this subject existed, and we were now called upon to adopt one for the first time, I cannot but think that the present rule of referring survivorship to the death of the testator, when there is no special intent manifest to the contrary, is the true and proper rule. My reasons for this are the following:—1. This rule is, in itself, the most equitable. 2. It is most in harmony with the express provisions of the statute of 1782, as it is with the general policy of our law, which is opposed to joint tenancies, and favors what, in the appropriate language of a very distinguished counsellor of this court, I may be permitted to call, “ the utmost partibility of estates.” In this the courts of equity in England have always concurred, and even those of law have done so since “ the statute of tenures” of the 12th of Charles the 2d. 3. This rule is also most in harmony with that admirable principle in the law, which leads the courts always to favor such a construction of wills as best provides for descendants or posterity. 4. It also best accords with that other long established and universally acknowledged rule of law, that “ a remainder is never to be Considered as contingent, when it can be taken to be vested.” [ *143 ] The reasons for this latter rule are numerous and strong. The earliest possible vesting of the remainder prevents the danger of its destruc tion by the intermediate tenant. It also prevents a total intestacy, which might be occasioned by the death of all the parties in remainder before the termination of the life estate. The above reasons are general and universally applicable. But 5. There "is, I think, in this particular case, a special reason for the application of the rule in question, in the general intent of the testator, manifest upon the face of the will itself. This intent, as we have *110 already seen, we have the high authority of Lord Coke for looking to as the polar star to guide us in our decision; and should, I think, in this case be conclusive.
I am, therefore, of opinion:—1. That words of survivorship in a will should, in all cases whore there is no special intent manifest to the contrary, be taken to refer to the death of the testator. 2. That the words of survivor-ship in this case were inserted in the will, and intended merely to prevent a lapse in the lifetime of the testator. 3. That the remainders in this case were vested, and not contingent; and that at the death of the testator, they did actually so vest in the devisees, Susan, Jane and Betsey, as to be transmissible to their respective legal representatives. 4. That the plaintiff in error, as heir at law of his deceased son, Isaac Henry Moore, and lessee of his son George William Moore, is entitled to the possession of one equal undivided moiety of the whole premises in question, and consequently that the judgment of the supreme court is erroneous and ought to be reversed.
By the Chancellor.
The question for our consideration in this case arises upon the proper application of the words “ survivors or survivor” in the limitation over of the remainder in the premises in question, to the three daughters of Mary, the black woman, after the termination of the life estáte of the mother therein ; the language of the will having left it doubtful to what time the testator intended the survivorship to apply. The [ *144 ] determination of this question does *not necessarily depend upon the fact of the remainders being vested in interest at the death of the testator, for where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainder-man is in esse and ascertained ; provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession. Doe. v. Nowell, 1 Maule & Sel. 327. Yet if the estate is limited over to another in the event of the death of the first remainderman before the determination of the particular estate, his vested estate will be subject to be divested by that event, and the interest of the substituted remainderman, which was before either an executory devise or a contingent remainder, will, if he is in esse and ascertained, be immediately changed into a vested remainder. If the words of survivorship in the present case, therefore, 'refer to the death of the tenant for life, and not to the death of the testator, still each of the three daughters took vested remainders in fee at the death of the testator, but subject to be divested by death before the time appointed for those estates to vest in possession.
A remainder is not to be considered as contingent in any case where it *111 may be construed to be vested consistently with the intention of the testator. The adverbs of time, therefore, such as when, then, after, from and after, e., in a devise of a remainder limited upon a particular estate, determinable on an event which must necessarily happen, are construed to relate merely to the time of the enjoyment of the estate, and not to the time of its vesting in interest. Boraston’s case, 3 Coke’s Rep. 19, a, & Thomas Fraser’s note, x. Such is especially the case in the construction of devises of real estate. A different construction has sometimes ■ been given to a bequest of personal property to be enjoyed at a future time, upon the supposition that the testator intended to annex the time to the gift of legacy itself, and not merely to designate the period when it was to be paid to or enjoyed by the legatee. Even in relation to bequests of personalty, however, *Lord Rosslyn, in the case of Madell v. Winter, 3 Ves. [ *145 ] Jun. 543, declared that the postponing of the vesting of a legacy, upon the supposition that time w'as annexed to the legacy itself, was a mere positive rule, derived from the practice of the ecclesiastical courts, but not founded upon any just principle of interpretation, and that it ought not to be extended. And he says in the same case that the court has not followed that rule in construction of devises of real estate.
In the present case it could not have been the intention of the testator to create cross remainders between the three daughters in favor of the survivors and survivor whenever they should happen to die, or to create estates in joint, tenancy, so as to convey the whole remainder to the longest liver and her heirs. The limitation is to the three, “ or to the survivors or suvivor of them, their or her heirs or assigns forever showing that the testator con-contemplated that, in some event at least, the estate was to go to the heirs of more than one of the daughters. .The survivorship must, therefore, refer itself either to the time of the death of the testator, or to the time when the remainders were to vest in possession, by the death of the mother who was tenant for life.
Where property is given, generally, to two or more persons and to the survivors of them, accompanied by other words showing that a tenancy in common and not a joint tenancy was in the contemplation of the testator, but without stating what time the survivorship is intended to apply, the court, for the purppose of giving effect to all the words of the will, have frequently applied the words of survivorship to the death of the testator, upon the supposition that they must have been inserted to prevent’ a lapse by the death of some of the devisees in his lifetime; and this principle has in many cases, been also applied to bequests of personal property. It has been so applied even where, as in this case, the survivorship was in reference to a remainder limited upon a previous estate given to another; but the decisions on the subject have not been uniform, either in England or in this country.
*112 One of the earliest cases is that of Lord Bindon v. The Earle of Suffolk, decided by Lord Cowper in 1707,1 Pere Wms. Reps. 96. That [ *146 ] was a devise of a debt due from the ‘crown, to the testator’s five grandchildren, share and share alike, equally to be divided between them ; and if any of them died, then his share to go to the survivors and survivor of them. The Lord Chancellor held that the survivorship referred itself to the time of the death of the testator, and was intended to prevent a lapse. His decision was afterwards reversed in the House of Lords, upon the ground of the peculiar nature of the debt which was the subject of the bequest: that court holding that the survivorship related to the time when the debt should be paid. The reversal was never considered as satisfactory, even on the grounds upon which it was placed by the appellate court. Those grounds, as stated in a subsequent case by Lord Rosslyn, were that the bequest was of an old debt from the crown, secured upon the hearth-money-revenue, which revenue had been taken away by statute. That it was therefore an unproductive fund, the ultimate payment of which depended upon interest and solicitation ; and that the recovery would be retarded if not defeated by its going to representatives. See Ves. Jun. 638.
Then came the case of Stringer v. Phillips, before Sir Joseph Jekyll, in 1730,1 Equity Cas. Ab. 293 ; which is more like the present, inasmuch as the question of survivorship arose upon a bequest of a remainder to five persons, and the survivors and survivor of them, after the death of the testator’s two sisters. See 1 Pere Wms. 97, Cox’s note. His honor decided that the devise over to the five was a tenancy in common, and that the sur vivorship related to such of them as should be living at the testator’s death.
This case was followed by that of Hawes v. Hawes, before Lord Hardwicke, in 1747; where the devise was to the three children of the testator when they respectively attained the age of twenty-one, with benefit of survivorship. His lordship held that they took vested estates immediately; but that the survivorship related to the age of twenty-one, when they were to enter into the full enjoyment of the estate ; and ■ that the share of one who died under age went to the survivors equally, and not solely to the one who was the heir at law of the decedent. 1 Ves. Sen. 13; 3 Atk. 523 S. C.
[ *147 3 *The next year the case of Stones v. Hearteley, 1 Ves. 165, came before the same learned judge; where the testator being seized of an estate in reversion expectant on the death of his aunt, and another smaller estate in possession, devised the whole to trustees to mortgage or sell so much as was necessary to pay his debts; with remainder to be divided among his three younger children and the survivor of them,, and their heirs forever. He held the survivorship to relate to the death of the testator; so that the issue of those who first died took their share of the estate.
*113 Then came the case of Wilson v. Bayley before the house of lords in 1760, upon an appeal from th# court of chancery in Ireland, 3 Bro. P. C. Toml. ed. 195. There, the testator devised lands to his two sons ; and in case they both should die unmarried and without issue, then his three daug h ters, and the survivors and survivor of them, to have the lands. And it-was held, reversing the decision of the court below, that the issue of one of the daughters who died in the lifetime of one of the sons were entitled to a share of the estate ; and that the whole did not, by the devise, go 5to the surviving daughter of the testator.
The case of Rose ex. dem. Vere v. Hill, 3 Burrow's Rep. 1881, which came before the court of king’s bench six years afterwards, was the case of the devise of a remainder after the termination of a life estate, given to the testator’s wife in these words: “ And from and after her decease I give and devise the same premises to the use of my five sons and daughters, (naming them) and the survivors and survivor of them ; and the executors and administrators of such survivors, share and share alike, as tenants in common, and not as joint tenants.” Lord Mansfield and the whole court, in that case, held that the survivorship related to the death of the testator, and was intended to prevent a lapse by the death of any of the devisees in remainder during his life. It is true, the question whether the survivorship related to the time of the decease of the testator, or to the termination of the life estate given to his wife was not necessarily presented in that case, as all the devisees survived them both. But the *court, in [ *148 ] delivering their opinions, placed the decision expressly upon the ground that the words “ survivors and survivor” reláted to the death "of the testator.
These cases were all decided before the revolution, and therefore are binding upon our courts, so far as cases upon the construction of wills containing different provisions in other respects can be said to be binding, in reference to other wills. It has indeed been said, that a case upon a will has no brother. But certainly some of the cases to which I have referred so nearly resemble the one now under consideration as to show that they probably belong to the same family.
The English cases subsequent to our separation from the mother country, particularly those in which the question has arisen upon bequests of personal property, have not always followed those to which I have referred. On the contrary, when there is a time subsequent to the death of the testator to which the survivorship may properly be applied, the judges have shown a disposition to adopt that, as the most natural construction of the will, consistently with the probable intention of the testator. See Hoghton v. Whitgreave, Jac. & Walk. Rep. 146. Brown v. Lord Kenyon, 3 Mad. Rep. 410. Pope v. Whitcome, 3 Russ. Rep. 124. Cripp v. Wolcott. 4 Mad. *114 Rep. 11. Russell v. Long, 4 Ves. 554. Daniel v. Daniel, 6 Id. 297. Jenour v. Jenour, 10 Id. 563. In the case of Roebuck v. Seam, however, which came before Lord Rosslyn, in 1793, on a will of personal estate, where the testatrix bequeathed ¿61000 in stock to trustees, to pay the income to her niece for life, and. after her decease to be equally divided between the testatrix’s brother and four sisters, and to the survivors or survivor of them, it was held that the survivorship related to the death of the testatrix, so as to give a share to the representatives of the legatees in remainder, who died in the lifetime of the niece. 4 Bro. C. C. 403. 2 Ves. Jun. 265, S. C. The case of Doe v. Prigg, decided by the court of king’s bench, in 1828, 8 Barn. & Cres. Rep. 231, is also in favor of referring the survivorship to the death of the testator; even where the devise is to a class, as well as where it is to individuals named by him.
[ *149 J *The only cases on the subject which I have seen in this country are those of Hulbert v. Emerson, 16 Mass. Rep. 244; Hansford v. Elliot, 9 Leigh' Rep. 79; Drayton v. Drayton, 1 Desuas. Eq. Rep. 324, Elliott v. Smith, Id. 499 ; the first decided in our sister state of Massachusetts, the second in Virginia, and the two last in the state of South Carolina. In the /first case real estate was devised to the testator’s son John, but in case he should not leave male issue then one half thereof was given to his children, and the other half equally among all the surviving children of the testator. There the supreme court of Massachusetts held that the survivorship among the other children of the testator referred to the time of the death of his son without issue male ; and that the only surviving child of the testator at that time was entitled to the half of the estate, to the exclusion of the children of her sisters, who died before her brother. John. In Drayton v. Drayton, the testator devised his estate to his youngest son, then an infant, in fee ; and if such son should die under age, and without issue, he directed the estate to be sold, and the money to be equally divided among the testator’s four surviving sons, or the survivors of them. The court of chancery in South Carolina decided that the survivorship related to the death of the testator ; so as to let in the children of one of the four sons who died after that time, but in the lifetime of the youngest son, to participate with their uncles in the remainder, limited to the four sons, and the survivors of them. A similar decision was made by the same court, in Elliot v. Smith ; upon a limitation over of a remainder, in a personal fund to the surviving children of the testator, in case of the death of the original legatees, before the time appointed for payment. And in the recent case of Hansford v. Elliott, 9 Leigh's Rep. 79, which was decided by the court of appeals in Virginia, in December, 1837, Judge Parker, who delivered the opinion of that court, after a full examination of the cases on this point, held, that wherever the words survivors and surviving were *115 used in a will, especially by an unlearned man, without manifesting any special intent to the contrary, the safest and soundest construction, and that most consonant to the intention of the testator, [ *150 3 was to refer them to his death; and not to give the whole estate to such legatee as happened to survive the tenant for life.
The weight of authority, both here and in England, therefore, unqestionably is in favor of applying the terms of survivorship, upon the devise of a remainder, to the death of the testator, instead of the time of the termination of the particular estate, where it is necessary to give effect to the probable intention of the testator in providing for the issue of the objects of his bounty, upon the death of their parents before the time appointed for the remainder to vest in possession ; and especially where the devise is to the individuals by name and not to them as a class.
In the case under consideration, there certainly was no good reason for excluding the children of either of the three daughters of Mary, who might happen to die during the continuance of her life estate, from an eqnal share with the other two in remainder of the estate ; and there is nothing in the will to indicate such an intention on the part of the testator. On the contrary, the previous clause of the will shows that in relation to the personal fund, in which the mother had also an estate or interest for life, he did not intend to confine his bounty to her immediate descendants only; for the principal of that fund is directed to be divided among the heirs of her body in equal proportions ; which must necessarily include the children of any of the daughters who might happen to die in the lifetime of the mother. This being the case, the two children .of Jane Moore, upon the. death of their mother, became entitled not only to her original share of the remainder in the house and lot, but also to the half of the other third which originally belonged to Susan, who survived the testator and died without issue; which share, upon her death, descended to the two surviving sisters, as her heirs at law; and upon the death of one of the sons of Jane, without issue, after the remainder became vested in possession, by the death of the tenant for life, his father took an estate for life in one-fourth of the property, and the other son became entitled to the reversion in the same fourth. By the lease of the other fourth, which the surviving son *took [ *151 3 immediately from his mother, the plaintiff in error is therefore entitled to the possession of one moiety of the lot, for the recovery of which this suit was brought.
If I am right in the conclusion at which I have arrived, the judgment of the supreme court should be reversed, and a judgment should be entered in favor of the defendant in the court below, upon the special verdict.
By Senator Vebplanck.
This is a devise of a house and lot of land to *116 Mary for life, and “ from and after her decease to Susan, Jane and Betsey, her daughters, or the survivor or survivors of them, her or their heirs or as" signs forever.” The question upon which the decision of the case turns, is ' this : to tohat period does this survivorship refer ? Independently of any peculiar circumstances or of other expressions in the will, the natural and plain interpretation would appear to be that the devise is to such of the daughters as should be surviving at the termination of the life estate, on the mother’s decease. This would make the estate contingent upon the survivor-ship, and if either of the daughters died before the mother, the children or other heirs of the deceased daughter have no interest or estate in the devised property.
Were this a new question, I could not for a moment hesitate to accede to that interpretation of the will. But similar words in devises have heretofore given rise to much litigation, and upon such words the question has often been discussed in the courts, when do the devisees take in interest ? Their estate does not commence in possession until the life estate is ended; but is the estate contingent until then, or, do not all the devisees take vested estates immediately on the testator’s death ? Repeated decisions in England, shme of them before the date of our independence, have recognized this latter interpretation, and have referred the survivorship to the date of the testator’s own death, as if he had said “ surviving at my decease.” See, amongst others, 3 Brown Cases in Par. 198 ; Rose v. Hill, 3 Burr R. 1881; Garland v. Thomas, 4 B. & P. 82. Also, the cases in 15 East, R. 358 ; 8 Vesey R.; 2 Ves. jr. 265 ; 6 Taunton 213, S. C.; 2 Marshall [ *152 ] *R. 24 ; and especially among the latter cases, Doe ex. dem. Waring v. Prigg, 8 Barn. & Cres. 231.
Some of these decisions went indeed in part upon peculiar circumstances, or upon the special language of the context; but others, again, upon gener. al reasons applicable to all cases, especially the policy of the law in always preferring to construe estates as vested in place of contingent, where there was room for doubt; and also the strong presumption, that it could not have been intended to cut off, without any provision, the children or other descendants of devisees who might die before the termination of the intermediate life estate. But all these cases concur in referring the survivorship to . the testator’s death, and not to the date of possession at the expiration of the intermediate estate. I do not recapitulate them, because most of those applicable to devises of real estate will be found briefly but perspicuously stated and explained by Judge Bayley in the per curiam opinion delivered by him in Doe ex. dem. Waring v. Prigg, to which I refer. For a long period also, I believe quite until the date of this will, (1796,) this interpretation was universal, both as to devises of real estate and legacies of personal property or money,
*117 In later times in England, the rule has been so frequently broken in upon by decisions in equity, as to personal property or real estate directed to be converted into money before its application, as to render it somewhat uncertain there whether it has any longer the authority of a general rule of construction as to legacies. A few years ago Sir John Leach, Vice Chancellor, even stated the reverse to be the rule, holding it to be now settled “ that if a previous life estate or interest be given, survivorship is to be referred to the death of the tenant for life.” Cripps v. Wolcott 4 Madd. R. 11. Nevertheless, even as to bequests of money and personal property, the weight of authority remains on the side of the older construction, whilst the repeated and unanimous decisions of the judges in the English common law courts, show that the rule has remained unshaken as to direct devises of real estate. The survivorship is considered as referring to the date of the testator’s death, unless, as it is always, conceded, where it is ‘“clear from [ *153 ] other reasons or the context, that the testator meant to make the remainder contingent upon the devisee’s living to the period of possession. Then indeed the intent must prevail, but the legal presumption, from the words themselves, is the other way.
In our own courts, the decision of Doe v. Provoost, 4 Johns. R. 63, also vested the estate in the devisees at the testator’s death, although the death of the tenant for life was also mentioned, and in familiar, untechnical language, that would be the most natural period supposed to be meant; the words of the will being, after devising the life estate, “ and immediately after her death, I give the house, &c. to such child or children as the said Christiana shall have lawfully borne at the time of her death.” This case, however, went mainly upon the presumed intent of the testator. Judge Van Ness, who delivered the opinion of the majority of the court, admitted that if the will had read “ such surviving children as she may have at her death,” it would have made the remainder contingent; and his reasoning goes throughout upon the probable intention of the testator, concerning which he thought “ the only question was whether he had made use of sufficient words to effectuate his intent.” Still the interpretation actually given was to vest an immediate estate in the children living at the testator’s death, although the words of the will referred to the death of the tenant for life, as the time when he gave the same.
The same rule of interpretation, referring the survivorship, not to the termination of the intermediate life estate, but to the testator’s death, unless a contrary intention is manifest from the rest of the will, has been recognized in the courts of South Carolina and of Virginia. In the latter state, the court of appeal has very recently established this interpretation in its broadest sense, and as applicable alike to personal and to real estate. The prevailing opinion of the court, (Judge Tucker dissenting) makes no dis *118 tinction on that head, and considers the English authorities, in spite of the - variant decisions in equity, as positive and conclusive. Hanford v. Elliot, 9 Leigh R. 79.
[ *154 ] *In the present case, if we adopt the artificial and very technical construction supported by such high and numerous authorities, the three daughters of Mary, immediately upon the testator’s death, (they surviving him) took vested remainders as tenants in common in the house and lot, the possession of which estate was to commence upon their mother’s death. Such an estate would descend to the children of the daughters who died before the termination of the life estate, and under these children the plaintiff in error claims. On the other interpretation, which refers the survivorship to the date of the mother’s death, the defendant being the only surviving daughter at her mother’s decease, takes the whole estate. , In the ordinary use of language it seems very improbable that a testator should refer to his own death as the period of survivorship, when he had at the same time mentioned the decease of another person in connection with the survivorship. This difficulty has been strongly felt by the eminent equity judges in England, who have of late years given the more obvious and direct interpretation to such words in wills of personal property. If we could, by following their example, get rid of the technical rule without injustice in this and other particular cases, it would simplify the use of language, and give greater certainty to similar testamentary dispositions which are likely to be by no means of rare occurrence ; for it must frequently happen that a testator may desire to provide for the support of his wife, his mother or his daughter, by a life estate only, in property which he means thereafter should be enjoyed in fee by others. My mind was much impressed with this consideration, and I have been desirous to affirm the judgment of the supreme court. But, on a more deliberate review of the case, I have come to the conclusion, that the words used by the testator had, at the time he employed them, acquired a strict, technical, legal sense, different from that of ordinary usage, and this technical sense he must be presumed to have intended, unless other circumstances, or other parts of the will denote a different intent.
When technical language is deliberately used in a will, it is the [ *155 ] fair conclusion of common sense as *well as the sound rule of legal experience, that they should be considered as employed in their settled technical sense, as much as if they had been so employed in a conveyance or other deliberately prepared instrument, unless it be clear from the will itself that the technical sense could not have been intended. The legal rule on this point is sometimes too loosely stated ; but as it was laid down by Lord Chancellor Redesdale, and not long ago cited and adopted by Chief Justice Denman, it commends itself to the understanding of all men. “ Technical words of known legal import must have their legal effect, *119 unless it is perfectly clear that the testator did not mean to use the words in their proper sense.” 5 Barn. & Ald. 640. The will under consideration presents no such indication of a different intent. It is not drawn in colloquial or familiar language, nor is there any thing to denote the want of professional knowledge in the person who drew the instrument. The testator makes various.and somewhat complicated provisions, especially in relation to the separate estate and maintenance of his daughter, “ free from the control or interest therein of her husband.” All these provisions are marked by legal accuracy and a technical precision of language. Then there is also the very common presumption that he did not intend to sacrifice the interests of the grand-children of the devisee of the estate for life, for the benefit of her surviving children. This general presumption is strengthened by the fact that in the money legacy of ¿£600, for the benefit of the same persons, the interest is directed to be paid to Mary for life, and after her decease, the principal is directed to be divided among the heirs of her body in equal proportions. Here it is clear that the whole legacy was not meant to go to the surviving daughter, but that the grand-children should be provided for, in case of their mother’s death.
I conclude, then, that the words, “ survivor or survivors” in a context similar to that of the present will, have acquired a technical meaning differing from that sense in which they would otherwise be taken, and referring the survivorship to the testator’s own death; that when technical words are thus used, they are to be interpreted in their *legal [ *156 ] sense, unless there be strong indications of a contrary intent; and that in this case, the style and character of the above will and the other circumstances and provisions of the will, denote, so far as they can, in a matter of doubt and probability only, that the technical sense of the words was deliberately selected by the testator to carry into effect his intent, and best provide, as it does, for the families of the objects of his bounty.
Should the majority of the court concur in this exposition of the object and :ntent of the will, the decison, so far as it may govern the future, will fix the ■¿echnieal meaning of the words used here, and they will be so construed judicially, when the context does not indicate some other intent. Thus this ense will become familiar, at least professionally, and in wills drawn with legal advice, the legal meaning will coincide with the private intent, as I think it does here.
On these gounds, I shall vote for reversing the judgment of the supreme court.
On the question being put, Shall this judgment he reversed ? the members of the court voted as follows:
*120 In the affirmative: The President of the Senate, the Chancellor, and Senators Dixon, Furman, Humphery, Hunt, Livingston, Maynard, Nicholas, Paige, Peck, Yerplanok, Works—13.
In the negative: Senators Hawkins, Hull, Wager—3.
Whereupon the judgment of the supreme court was reversed.