Slack and Page v. Bird.

---

SLACK and PAGE, trustees, vs. BIRD and others.

1. Under a devise to trustees of a house and lot in trust for the use, benefit, and profit of M. C., R. L., and W. S. L., during their natural lives, with a further direction that upon the death of the last survivor of said three persons, the trustees should dispose of said house and lot and divide the proceeds equally among the surviving children of W. S. L. and R. L., *held*, that the word "surviving" refers to the period of distribution, and not to the time of testator's death.

2. A child of a deceased daughter of W. S. L., the last survivor of the tenants for life, who survived the testator, but died in the lifetime of W. S. L., is excluded from the gift.

3. Costs of the trustees, who have properly asked the direction of the court, and the surviving children who have answered, must be paid out of the trust fund; the daughter's child must pay her own costs.

---

Argued on final hearing, upon bill, answer, and proofs.

*Mr. A. Browning*, for defendant Egbert.

*Mr. W. B. Williams*, for Aitken and others.

THE CHANCELLOR.

The complainants, trustees under the will of George W. Tucker, ask for the direction of the court in the execution of their trust. This direction involves the construction of the clauses creating the trust. The will devised to them, as trustees, a house and lot in trust, for the use, benefit, and profit of M. C., R. L., and W. S. L., during their natural lives. R. L. was the wife of W. S. L., and the daughter of M. C., who was testator's sister. The will further directed that, upon the death of the last survivor of said three persons, the trustees should dispose of said house and lot and divide the proceeds equally among the surviving children of W. S. L. and R. L.

W. S. L. and R. L., at the date of the will and the death of the testator, had four children, three of whom are defendants in this suit; the fourth was Elizabeth Egbert, who died before her father, W. S. Lippincott, the last survivor of the tenants for life, leaving Ella Egbert, her only child, surviving her. Ella Egbert is still an infant, and is a defendant in this suit.

The surviving children claim that they are entitled to the whole proceeds of the sale, and the guardian of Ella Egbert contends that she is entitled to one-fourth, on the ground that at the death of the testator one-fourth of the remainder vested in her mother, and on her mother's death descended to her. This is claimed on the principle that the word "surviving," in the will, relates to the death of the testator, and not to the period of distribution.

The question whether, in a gift like this, of certain property after an estate for life, to the survivors of a class or of certain persons named, it vests in those of the class or persons who survive at the death of the testator, or those who survive at the termination of the life estate, or other precedent estate, is one upon which courts and jurists of the highest authority and reputation, both in England and this country, have differed radically, and upon principles that cannot be reconciled. The only solution in this case is to determine on which side

is the weight of authority by which this court ought to be guided.

Mr. Jarman, in his valuable treatise on Wills, has given the history of the changes and variations in the decisions in England, with abstracts of the principal cases. 2 *Jarman on Wills*, ch. 48, *III.*, *pp.* 631–658. These cases, with some American cases, are also noticed and reviewed by three of the judges of the Court of Errors in New York, in their learned and elaborate opinions in *Moore* v. *Lyons*, 25 *Wend.* 119.

The older decisions in England, with one or two exceptions, hold that the gift is to those surviving at the death of the testator. *Lord Bindon* v. *Earl of Suffolk*, 1 *P. W.* 96 ; *Roebuck* v. *Dean*, 2 *Ves.*, *jun.*, 265 ; *Russell* v. *Long*, 4 *Ves.* 553 ; *Stringer* v. *Phillips*, 1 *Eq. Cases Abr.* 293, *pl.* 11 ; *S. C.*, 1 *P. W.* (*Cox's ed.*) 97 *n* ; *Rose* v. *Hill*, 3 *Burr.* 1881 ; *Wilson* v. *Bayly*, 3 *Bro. P. C.* (*Toml. ed.*) 195 ; *Stones* v. *Heurtly*, 1 *Ves.*, *sen.*, 165 ; *Perry* v. *Woods*, 3 *Ves.* 204 ; *Brown* v. *Bigg*, 7 *Ves.* 280 ; *Garland* v. *Thomas*, 1 *B. & P.*, *N. S.*, 82 ; *Edwards* v. *Symons*, 6 *Taunt.* 213 ; *Doe d. Long* v. *Prigg*, 8 *B. & C.* 231 ; *Haws* v. *Haws*, 3 *Atk.* 524.

The more recent decisions in England, and that in the House of Lords, 4 *Bro. P. C.* 574, reversing the Chancellor's decision in Lord Bindon *v.* The Earl of Suffolk, hold that the word "survivors" refers to the survivors at the termination of the previous estate, or the time of distribution of the gift. *Brograve* v. *Winder*, 2 *Ves.*, *jun.*, 634 ; *Newton* v. *Ayscough*, 19 *Ves.* 534 ; *Houghton* v. *Whitgreave*, 1 *J. & W.* 146 ; *Daniell* v. *Daniell*, 6 *Ves.* 297 ; *Wordsworth* v. *Wood*, 2 *Beav.* 25 ; 4 *M. & Cr.* 641 ; *Cripps* v. *Wolcott*, 4 *Madd.* 11 ; *Gibbs* v. *Tait*, 8 *Sim.* 132 ; *Blewitt* v. *Stauffers*, 9 *Law Journ.*, *N. S.*, ch. 209 ; *Pope* v. *Whitcombe*, 3 *Russ.* 124.

From these authorities Jarman concludes the established rule to be, that in such case the gift to survivors takes effect in favor only of those who survive at the period of distribution. He intimates that the case of Doe *v.* Prigg may forbid the application of the rule to devises of real estate. And since the date of Jarman's treatise the doctrine of

Cripps v. Wolcott has been followed by Lord Romilly in *Howard* v. *Collins*, 5 *Eq. Cases L. R.* 349, and has been three times confirmed in the House of Lords. *Woodsworth* v. *Wood*, 1 *H. L. Cases* 129 ; *Young* v. *Robertson*, 8 *Jur.*, *N. S.*, 825 ; *Taaffe* v. *Conmee*, 10 *H. L. Cases* 64. And although Lord Westbury, in his opinion in Taaffe v. Conmee, seems to doubt with Mr. Jarman whether the doctrine was fully settled, except as to personal estate, yet in Woodsworth v. Wood and Young v. Robertson, the gift to survivors included real as well as personal estate, and the doctrine was applied to the whole, without any distinction. The doctrine, therefore, that in such cases the word "survivors" includes only those surviving at the period of distribution, unless it is referred to some other period by words in the will, must now be considered the settled doctrine in that country.

In this country, the Supreme Court of New York, in Moore v. Lyons, in their opinion delivered by Chief Justice Nelson, held that in such case the survivorship refers to the death of the life tenant, and based the decision on the plain intent of the testator. 25 *Wend.* 120. This decision was reversed in the Court of Errors. Senator Bradish, the president, Chancellor Walworth, and Senator Verplanck delivering opinions founded on the conflicting decisions in England, and a nice balancing of the weight of those opinions.

In Massachusetts, the rule is established that the survivors in such case are those who survive at the death of the life tenant, and not those who survive at the death of the testator. *Hulburt* v. *Emerson*, 16 *Mass.* 241 ; *Olney* v. *Hull*, 21 *Pick.* 311.

In Virginia and South Carolina, the word is held to refer to survivors at the death of the testator. *Hansford* v. *Elliott*, 9 *Leigh* 79 ; *Drayton* v. *Drayton*, 1 *Dess. Eq. R.* 324 ; *Elliott* v. *Smith*, *Ib.* 499.

Were these cases the only guide, I should be much inclined to follow the later English decisions, not only on the ground that they have the clear weight of authority, but because they are more consistent with the rules of construction, and with

the plain, natural, and ordinary import of the language. This, in fact, is admitted in some of the decisions to the contrary, which rest themselves upon the weight of authority alone. Sir William Grant, in Brown *v.* Bigg, and Justice Bailey, in delivering the judgment in Doe *v.* Prigg, express great doubt of the correctness of their decisions. Not only does the natural and plain meaning of words giving an estate at the death of a life tenant to the survivors of a class or of certain individuals named, refer to those then surviving, but it seems to me that no testator or draftsman who designed to provide that the whole remainder should go to those of the class who were living at testator's death, would ever use these words to express that intention, and would not fail to use words distinctly expressing the intention so formed; the words " such as may survive me," or " be living at my death," would not fail to suggest themselves.

The argument from the probability that the testator would not intend that the share given to one of a class should be defeated by his death before a life tenant, can have no weight. Few wills would stand as written, if the conjectures or speculation of a judge as to what the testator would have done had a case not provided for been suggested to him, could change the meaning from that expressed. And were the rule that such conjectures should govern the construction of the will, I think it very doubtful if a testator would divert any part of his bounty from nieces or relatives that he knew, and was attached to, for the purpose of sharing it with possible children yet to be born, whom he had never seen and could have no regard for. The old-established common law doctrine of lapse is founded on the assumption that a testator intends a gift as a personal bounty, and that an intention to extend it to heirs or children will not be presumed, but must be expressed.

But I am not at liberty to decide this matter according to my own conclusion as to the weight of conflicting authorities or the strength of the reasoning on which they are respectively founded. The question has been adjudicated in this

court by a decision which has been suffered to stand for years as the law of this court, and which I am not at liberty to disregard; or if at all, only for reasons far more cogent than exist here.

In the case of *Van Tilburgh* v. *Hollinshead*, 1 *McCarter* 32, the same question arose as is presented in this case. It was there mixed with another that does not arise here. But this question was necessarily involved in the decision of the case, and was one upon which it depended and was placed. There the testator gave lands to his son William for life, and at his decease to his (William's) surviving children. The court held that only those children of William that were living at his death could take.

I find no other case in this state that touches this question, and if I had any doubt concerning it, that case as a precedent, and also from the learning and ability of the distinguished jurist who decided it, would control my decision in this.

The opinion of Chancellor Vroom in *Wintermute's Ex'rs* v. *Snyder's Ex'rs*, 2 *Green's Ch.* 489, relied on by counsel, does not touch the question before me. It simply decides that a gift to persons in being, of a remainder after a life estate, is a vested legacy.

But with such a mass of conflicting cases adjudged by eminent jurists, I think the trustee was not to be blamed for asking the direction of this court, and I shall order his costs to be paid out of the trust fund, together with the costs of the surviving children who have answered. The infant defendant must pay her own costs.