In the Matter of the Judicial Settlement of the Accounts of DWIGHT
    MERRIMAN and STEPHEN BROWN, as Surviving Trustees under the
    Last Will and Testament of ABRAHAM WING, Deceased.

ELLA W. SHARP, and WILLIAM H. WITHINGTON as Ancillary Admin-
    istrator, etc., of HOWARD L. MERRIMAN, Deceased, Appellants.

DWIGHT MERRIMAN and STEPHEN BROWN, as Surviving Trustees
    under the Last Will and Testament of ABRAHAM WING, Deceased,
    and Others, Respondents.

*Will — vesting of estates favored — enjoyment of a remainder postponed — gifts by
    implication — when "children" do not take as a class — income where the prin-
    cipal is deferred.*

The law favors the vesting of estates, and a remainder is not to be considered as
    contingent in any case where it may be held to be vested, consistently with
    the intent of the testator.

Where a remainder is bequeathed, the enjoyment of which is postponed, time
    enters into the substance of the gift when its existence depends upon a con-
    tingency that may or may not happen, but where the only contingency is a
    death certain to occur, and the legatees are known and fixed, a postponing
    clause should be regarded as relating only to the period of actual enjoyment.

The rule that where there is no gift to a legatee, until the occurrence of events
    which must happen, except by a direction to executors to pay or to divide
    and pay, the legacy does not vest until such events occur, is not an inflexible
    rule, and must yield to the intent of the testator as deduced from the whole
    will, and where a will evinces an intent to make a direct gift to a legatee a
    direction for its payment after the happening of a certain event does not
    prevent its vesting at the death of the testator.

Where a will contains a bequest to several children, and they become vested with
    the property upon the death of the testator, such children take distributively
    and not as a class, unless a contrary intent appears in the will.

The will of one Abraham Wing gave to his widow, Frances A. Wing, a life estate
    in certain property, and also an annuity; to his daughter, Mary W. Merriman,
    a life estate in a farm, with remainder to her children.   It then gave the rest of
    his property to his executors in trust for uses and purposes which were stated
    in the will, the fourth clause of which, after providing for certain payments,
    directed his executors to pay over the balance of the income until the death or
    remarriage of his widow, to his daughters, Mary W. Merriman and Ella W.
    Parker, equally, and if either daughter died during the life of the widow, to
    pay to the children of such daughter her share of the income; and that, in case
    both daughters died during the life of the widow, one-half of the income
    should be paid to the children of each daughter, from and after the death of
    such daughter.

The fifth clause of the will directed the executors, upon the death or remarriage of his widow, to convert all his real estate into personal property, to set apart a sum of $5,000 for the support of his sister, Mary Ann, if living, and for her funeral expenses; and the testator then bequeathed the residue of this sum as follows: If both daughters should be living, one-half thereof to each; if one daughter only should be living, one-half to her and one-half to the children of the deceased daughter; and if both daughters were dead, one-half to be given to the children of each daughter.

He then directed that the rest of his estate should be divided by his executors into two parts, and disposed of as follows: "1st. If neither of my said daughters shall be then living, one of said half parts shall be paid to the children of said Mary W., and the other half to the children of said Ella W. 2nd. If one of said daughters shall be then living and the other deceased, then one of said half parts shall be paid to the children of the deceased daughter and the other half part shall be invested and kept invested by my executors during the lifetime of such surviving daughter, and the income therefrom shall be annually paid over to her, and on her decease the principal shall be paid over to her children. 3rd. If both my said daughters shall be then living, then one of said half parts shall be set apart for and assigned to the children of Mary W., and kept invested by my executors during her lifetime, and the income thereof paid over annually to said Mary W., and on her decease, the principal of such half part shall be paid over to her children, and the other half part shall be set apart for and assigned to the children of said Ella W., and kept invested by my executors during her lifetime, and the income thereof paid over annually to said Ella W., and on her decease the principal of such half part shall be paid to her children.

"It being my intention and will that my said daughters shall have and enjoy absolutely for their own property during their lives respectively, each one-half of the whole income of my estate from the date of my decease * * * and that the principal * * * shall be equally divided between the children of said daughters absolutely for their own property, subject, however, to the above-provided life estate in the same."

The testator died in 1873, leaving his widow, a daughter Mary W. (since deceased), the wife of Dwight Merriman, and three children of their marriage, and a daughter Ella W. Parker, having two children. Of the children of Mary W. Merriman only one child, Ella W. Sharp, is living; the widow of the testator is alive, and also the husband of Mary W. Merriman.

Upon an appeal by Ella W. Sharp and William H. Withington, as administrator of the estate of one of the deceased children of Mary W. Merriman, from a decree of the Surrogate's Court settling the accounts of the trustees under the will of Abraham Wing,

*Held,* that the bequests to the children of Mary W. Merriman, grandchildren of the testator, were not dependent, as to their vesting, upon the fact that the children should survive the widow of the testator, but vested at the testator's death;

That the shares vested in the grandchildren as tenants in common, and not as a class, immediately upon the death of the testator, but the possession of such shares by the provisions of the will was postponed until the termination of the widowhood of Frances A. Wing and the life estate of their mother, and subject to the estate of the trustees for the period of the lives of said Frances A. Wing and Mary W. Merriman;

That, after the death of Mary W. Merriman and during the life of the testator's widow, each child of Mary W. Merriman became vested with the title to one-third of one-half of the income of the residuary estate.

APPEAL by Ella W. Sharp and another from a decree and judgment of the Surrogate's Court of the county of Warren, entered in said Surrogate's Court on the 31st day of July, 1895, judicially settling the accounts of the trustees under the will of Abraham Wing.

*Charles A. Blair*, for William H. Withington, appellant.

*Edward T. Brackett* and *Thomas A. Wilson*, for Ella W. Sharp, appellant.

*A. D. Wait*, for Dwight Merriman, respondent.

PUTNAM, J.:

We are called upon to review the decree of the surrogate of Warren county stating and settling the accounts of Stephen Brown and Dwight Merriman, as trustees under the will of Abraham Wing, deceased, in which decree the surrogate gave a judicial construction to the provisions of said instrument.

The will bequeathed to Frances A. Wing, wife of the testator, his mansion house and lot and certain personal property therein during the time she should remain his widow, and also an annuity of $3,000 ; to his daughter, Mary W. Merriman, a life estate in a farm in Michigan, with remainder to her children, and the rest of his property to his executors in trust for the uses and purposes in the will mentioned. The instrument contained the following provisions :

"*Fourth*. I hereby authorize and direct my executors to apply and appropriate the avails and proceeds of said property and income therefrom to the uses and purposes following, to wit : 1st. To pay my funeral expenses and all my just debts. 2nd. To pay the above-mentioned annuity to my wife. * * * 3rd. To furnish whatever money may be necessary, in the discretion of my executors, for

the reasonable care and support of my sister, Mary Ann Wing, from time to time as she shall need the same, and also to pay her funeral expenses. 4th. To pay over all the balance of the income and increase of my estate, except the expenses of the execution of this trust, including taxes and all other legal charges thereon (which are to be first paid), annually until the death or marriage of said Frances A., to my said daughters, Mary W. Merriman and Ella W. Parker, share and share alike, for their own use and benefit respectively, and in case of the decease of either of said daughters during the widowhood of said Frances A., as aforesaid, then and in such case to pay the (half) share of said income to the children of such deceased daughter which would have belonged and been paid to the deceased daughter had she survived; and in case of the death of both of said daughters during the widowhood of said Frances A., then such income shall be paid and belong to the children of said daughters respectively, one-half of said income to the children of Mary W., and the other half to the children of Ella W., from and after the death of each of said daughters respectively.

"*Fifth.* I direct my executors on the death, or, if she shall marry, then on the marriage, of said Frances A., to convert said mansion house and lot and any other real estate remaining undisposed of (if any) into personal property so that my whole estate shall become personal property, and, if my sister Mary Ann shall then be living, to set apart the sum of ($5,000) five thousand dollars therefrom and invest the same as a fund, out of which and the income therefrom my executors shall provide for her support and maintenance during her lifetime, as above directed, and funeral expenses, and whatever may not be used and appropriated for that purpose I give and bequeath as follows: If my daughters shall be both living, one-half to each of them; if one daughter only shall be then living, one-half to her and the other half to the children of the deceased daughter, and if both daughters shall be deceased, then one-half to the children of one daughter and the other half to the children of the other daughter, and the balance (after deducting said $5,000), and the whole if said Mary Ann shall not survive the death or marriage of said Frances A., shall be divided into two equal parts, share and share alike, by my executors and be disposed of as follows: 1st. If neither of my said daughters shall be then

living, one of said half parts shall be paid to the children of said Mary W., and the other half to the children of said Ella W. 2nd. If one of said daughters shall be then living and the other deceased, then one of said half parts shall be paid to the children of the deceased daughter and the other half part shall be invested and kept invested by my executors during the lifetime of such surviving daughter, and the income therefrom shall be annually paid over to her, and on her decease the principal shall be paid over to her children. 3rd. If both my said daughters shall be then living, then one of said half parts shall be set apart for and assigned to the children of Mary W., and kept invested by my executors during her lifetime, and the income thereof paid over annually to said Mary W., and on her decease the principal of such half part shall be paid over to her children, and the other half part shall be set apart for and assigned to the children of said Ella W., and kept invested by my executors during her lifetime, and the income thereof paid over annually to said Ella W., and on her decease the principal of such half part shall be paid to her children. It being my intention and will that my said daughters shall have and enjoy absolutely for their own property during their lives respectively, each one-half of the whole income of my estate from the date of my decease (subject, however, to the provisions and bequests in favor of my wife and sister, and all taxes, the expenses of executing the trusts herein created and all other legal charges, and also excepting the real estate and use thereof devised to said Mary W., and her children), but no part of the principal (except said $5,000 or the balance thereof which may remain after the decease of my sister Mary Ann), and that the principal (except said $5,000, or the balance thereof unexpended, and said devises in fee) shall be equally divided between the children of said daughters absolutely for their own property, subject, however, to the above-provided life estate in the same, one-half to the children of Mary W., and the other half to the children of Ella W. And the receipts of said Mary W., and Ella W., respectively, for such income shall be a sufficient discharge and voucher to my executors."

The testator died on the 13th day of June, 1873, leaving surviving him his widow, Frances A., his daughter, Mary W., wife of Dwight Merriman, and Tracy D. Merriman, Nellie W. Merriman

(now Ella W. Sharp) and Howard L. Merriman, children of said Mary W. and Dwight Merriman; also his daughter, Ella W. Parker, and her two children, Frederick T. and Frank W. Taylor. All of said children were born before the execution of the will.

The questions submitted to us pertain exclusively to the one-half of the estate bequeathed to Mary W. Merriman and her children.

Tracy D. Merriman, one of the children of said Mary W., died intestate, never having married, on January 19, 1880; Mary W. Merriman died June 10, 1892, and her husband, Dwight Merriman, was appointed temporary administrator of her estate. Howard L. Merriman, another child of said Mary W., died August 4, 1893, and is represented by William H. Withington, as administrator. Hence, of the family of Mary W., appellant, Ella W. Sharp, her daughter, and Dwight Merriman, her husband, only remain.

The surrogate determined that on the death of the testator the three children of his daughter Mary took a vested interest in the principal of one-half of the estate; and that one-third of the net income thereof, after the death of said Mary W., belonged to said Ella W. Sharp, one-third to Withington, as administrator of Howard L. Merriman, and one-third to Dwight Merriman individually, as father and next of kin of Tracy D. Merriman, deceased.

The appellant, Sharp, contends that under the provisions of the will the principal of the estate bequeathed to the children of Mary W. will not vest until the death of the widow of the testator; that the income thereof did not vest in such children until the death of said Mary W.; that she, said appellant, as survivor of the children of Mary W., will be entitled to the whole of said principal; that the income in the will directed to be paid to the children of Mary W. in consequence of the death of Tracy and his mother, after her death, was payable to said Ella and her brother Howard, and on his death all of said income belonged to her.

It will be seen by the above-quoted provisions of the will that the legal estate of the trustees ends as to the one-half part of the estate bequeathed to Mrs. Merriman and her children with the lives of the widow and the daughter Mary. On the termination of these lives the trustees are to divide such one-half part of the estate, and their legal interest therein ceases. Hence, subject to the estate of the trustees under the will, there is a remainder not bequeathed to them,

and which, unless vested in the grandchildren on the death of the testator, remained during the continuance of the estate of the trustees unvested. (*Matter of Tienken*, 131 N. Y. 391; *Stevenson* v. *Lesley et al.*, 70 id. 512; *Goebel et al.* v. *Wolf*, 113 id. 405.)

There are certain well-settled principles which it is proper to bear in mind at the outset of our investigation.

One is that the law favors the vesting of estates. A remainder is not to be considered as contingent in any case where it may be held vested consistently with the intent of the testator. (*Moore* v. *Lyons*, 25 Wend. 119–144.)

But while the law favors the vesting of legacies as soon as possible after the death of a testator, the intention of the deceased, as deducible from the language and provisions of the will, must be carried out. (*Bowditch* v. *Ayrault*, 138 N. Y. 222, 228, 229.)

It has also been held that where a remainder is bequeathed, the enjoyment of which is postponed, time enters into the substance of the gift when its existence depends upon a contingency that may or may not happen; but where the only contingency is a death certain to occur, and the legatees are known and fixed, a postponing clause should be regarded as relating only to the period of actual enjoyment. (*Matter of Young*, 145 N. Y. 535–539; *Bowditch* v. *Ayrault*, 138 id. 229, 230; *Moore* v. *Lyons*, 25 Wend. 143, 144.)

It is urged by said appellant that in the will under consideration there is no direct gift by testator to the children of his daughters, but merely a direction to the executors to pay or to divide and pay, on the death or marriage of his widow, and on the termination of the life estate of the mother, and hence that the principal of the estate bequeathed to the grandchildren will not vest until the death of Frances A. Wing. But the rule invoked by the appellant is not inflexible, and is subordinate to the primary rule of construction that the intent of the testator, as deducible from the whole will, shall govern. (*Goebel et al.* v. *Wolf*, 113 N. Y. 405–412; *Matter of Young, supra*, 538; *Bowditch* v. *Ayrault, supra*, 229; *Matter of Seebeck*, 140 N. Y. 246.)

It becomes our duty, therefore, to carefully examine the language and provisions of the will under consideration, with a view of arriving at the intent of the testator as to the vesting of the estate bequeathed to his grandchildren.

After a careful consideration of the latter part of the fifth clause of the will, and the other provisions and directions therein contained, and bearing in mind the principle above adverted to, that a remainder is not to be considered as contingent in any case where it may be construed to be vested consistently with the intent of the testator, we have reached the conclusion that each of the three children of Mary W. Merriman living at the death of the testator took a vested remainder in his or her share of the estate expectant upon the termination of the trust estate. We think the provisions in the will indicate an intent by the testator that the bequests to his grandchildren should not be contingent and dependent upon their surviving the widow, but should vest on his decease.

In the first place, the position taken by the appellant Sharp, that the will under consideration contains no gift of the principal of one-half of the testator's estate to the children of his daughter Mary, *except by a direction to divide* at a future time, is not entirely correct.

In the latter part of the fifth clause the testator says : " It being my intention and will that my said daughters shall have and enjoy absolutely for their own property during their lives respectively each one-half of the whole income of my estate from the date of my decease, * * * and that the principal * * * shall be equally divided between the children of said daughters absolutely for their own property, subject, however, to the above-provided life estate in the same." This language imports a present and direct gift of the said principal to his grandchildren, subject to the life estate of their mothers therein, although the enjoyment of such principal, under other provisions contained in the will, is postponed until the termination of the estate of the trustees.

The clause above quoted has, we think, the same effect as if the testator had said " I will, devise and bequeath the income of said principal sum to my daughters, one-half to each, during their respective lives ; and subject to such life estates I will said principal to their children, to be equally divided between them." If this construction of the language of the instrument is correct, the case is within the principle that where a will evinces an intent to make a direct gift to a legatee a direction for payment after the happening of a certain event does not prevent its vesting at the death of the

testator. (*Matter of Accounting of Mahan*, 98 N. Y. 372–376; *Warner* v. *Durant*, 76 id. 133–136; *Moore* v. *Lyons, supra,* 143, 144.)

But assuming that the construction placed upon the language of the will by the appellant Sharp, that it contains no gift to the children of the testator's daughter Mary except by the direction to his trustees to pay at a future time, is correct, yet, we think, the instrument indicates the intent of the testator that the estate bequeathed to his said grandchildren should vest on his decease.

In the first place the language used by the testator above referred to, in which he declares it to be his will that his said grandchildren shall have the principal of one-half of his estate subject to the life estate of their mother evinces an intent to make a present and absolute gift to them. Certainly the language used by the testator is not inconsistent with the vesting of the remainder on his death in his said grandchildren, and hence the estate bequeathed to them should not be deemed contingent. (*Moore* v. *Lyons, supra,* 144.)

As we have seen, the intent of the testator as to the vesting of his estate, as collected from the provisions of the will, must be carried out. In the clause above quoted he declares his intent. The declaration is contained in one sentence. It refers to all his estate. It is his intent, he says, that his daughters shall have — each one-half — the income of all his estate, subject to the provisions in favor of his wife and sister; but no part of the principal, and that such principal shall be equally divided between the children of said daughters absolutely for their own property, subject to the life estates of their mothers. This language indicates an intent to make a direct and absolute gift to the children of his daughters.

The life estates of the daughters commenced on the death of the testator. From his death they were entitled to receive the income of his estate, except such portion as was bequeathed to the widow, but not the principal, which the testator gave to the children of his daughters. The appellant Sharp construes the said provision as if it provided that " the said principal shall be equally divided between the children of said daughters absolutely for their own property," *provided they should survive his widow.* Such a construction is unauthorized. The testator does not declare his intent to give one-half of the principal to the survivor or survivors of the children of

his daughter Mary at the time of the distribution of his estate, but rather to make a present gift of such principal to said children.

It will be noticed that, if the position of said appellant is sustained, if the three children of Mary W. Merriman should die before the widow, the one-half of the estate set apart for said Mary and her children would remain undisposed of on her decease. Also, under the will, had Mary died before either of the children each would have been entitled to one-third of the income of one-half of the estate, although the vesting of the estate was contingent upon their surviving the widow. In other words, they would have received the income of a principal which, as the appellant Sharp contends, was not vested in or owned by them and which they might never own.

The fact above referred to, that the testator declared his intent to be that the principal of his estate should be divided among his grandchildren, and did not provide that it should go to the survivor or survivors of them at the time of distribution, is most significant.

ANDREWS, J., in *Goebel et al.* v. *Wolf* (*supra*, 413), said : " There is nothing on the face of the will to indicate that the testator contemplated the death of any of his children during minority, or that any of them might not take the equal one-fourth share of his estate on the final division. The gift of the ultimate estate is not, in terms, to his children *living* at the time of the division, or to the *survivors* of his children, but the division is directed to be made " among my children, share and share alike." Words of survivorship were not necessary if the gift, by construction of law, was to the children who should be living at the time of division. But it would have been very natural that words of survivorship should have been inserted to emphasize his intention, if the testator had intended that only children surviving at that time should be entitled to his estate." Those remarks of the learned judge apply to this case. Here the testator declared his intent and will to be that the principal set apart should be divided equally between the children of his said daughters absolutely for their own property, subject to the life estates of the mothers. There are no words of survivorship. The gift is not made to those children of the daughters living at the time of the termination of the life of the widow, but to the children of the daughters, apparently the children living at the time of his death.

We have already called attention to the doctrine stated by FINCH, J., in *Matter of Young* (*supra*, 539), that "time may fairly be said to enter into the substance of a gift when the existence of such a gift depends upon a contingency which may or may not happen, but where the only contingency is a death certain to occur, and the legatees are known and fixed, it is more natural to regard a postponed division as relating to the period of actual enjoyment, where there are other words in the will evincing an intent to make the gift." So, in this case, there are words indicating an intent of the testator to make a present gift, as we have seen. The legatees are known and certain. The only contingency claimed to prevent the vesting of the estate is the death of the widow, which is certain to occur.

Many late cases decided in our court of last resort might be cited which tend to support our views in regard to the vesting of the estate in question in the grandchildren of the testator.

In *Goebel et al.* v. *Wolf* (*supra*) the will gave an estate, consisting of real and personal property, to trustees, and provided that one-half of the income thereof should be paid to the wife during her life, and, after some provisions unnecessary to state, contained the following direction to the trustees: "Immediately upon the arrival of my youngest child at the age of twenty-one years, in case my wife shall not then be living, to divide all my estate, real and personal, and the accumulations of interest equally among my children, share and share alike, after deducting all advances made as above provided to any of my children, so that each of my children shall have and receive an equal share of my estate." There was in the will no gift, in terms, to the children of the testator. It appeared that one of the four infant children living at the time of the testator's death had since died under age and without issue. The court held that the gift was not to the children as a class, but that each, on the death of the testator, took a vested remainder in one-fourth of the residuary estate dependent upon the termination of the trust, and that the share of the one who died, with the accumulations of interest thereon, descended to his heirs or next of kin, according to the nature of the property; also, that such descendants were entitled to any income that might thereafter accrue during the trust period.

In *Bowditch* v. *Ayrault* (138 N. Y. 222) the will devised the

residue of the estate to the trustee, and directed him, " as fast as practicable, to divide two-thirds of said residuary estate between all the children of my brother John Ayrault and my sister Mary Smith,'widow of Sparrow Smith, and of my deceased brothers Nicholas Ayrault, Roswell Ayrault and Lyman Ayrault, and of my deceased sister Emily Griffith, who may be living at the time of my decease, and to the descendants of such of said children as may be deceased when said estate or any part thereof is distributed; said two-thirds of said residuary estate to be divided between all such children and their descendants equally, share and share alike; all the children of each deceased person to receive collectively the portion to which their parent would, if living at such distribution, be entitled under this provision." In his opinion Judge PECKHAM says : " The gift is, however, in substance to the children living at his decease, and we think it then vested, subject to be divested by the death of any child before distribution, and by the substitution of his or her descendants, if any were left. If there were no such descendants, then the property remained vested in the child, and upon his death formed part of his estate, subject to be disposed of as the law or his will provided." There was no gift to the children of the testator or to their descendants except by the direction to the trustee to divide the two-thirds as above specified. The gift was to the trustee, who held, under the will, the legal estate. It will be observed that in the case cited the bequest being to the children of the testator and the descendants of those who should have died before the time of distribution, to be divided equally, share and share alike, between them, the court in effect held that each of such children on the death of the testator became seized of a share of the estate, which, on his death, before distribution, formed a part of his estate. In the *Matter of Seebeck* (140 N. Y. 241) the testator devised an estate to his sister for life with remainder to her children in equal shares. It was held that the children became vested with the estate on the decease of the testator, distributively, and not as a class. (See, also, *Matter of Tienken, supra ; Matter of Young, supra ; Moore* v. *Lyons*, 25 Wend. 119 ; *Stevenson* v. *Lesley et al.*, 70 N. Y. 512.)

Counsel for appellant Sharp urge that where a class as " children " is designated in a devise or bequest, without words indicating that

they are to take in severalty, as by referring to the individuals composing the class by name, or number, or by providing that the gift shall be " divided equally," " share and share alike," or similar expressions, or other provisions of the will indicating an intent that they are to take distributively, they take as a class, and the survivor, at the time the gift vests, takes the whole, and cites many authorities to sustain their contention. If the conclusion reached by us is correct, that the will in question evinces the intent of the testator to make a gift to the children of his daughter Mary, not contingent upon their surviving the widow, but a gift vesting on his decease, the authorities so cited by said appellant are not applicable to this case, nor are they in conflict with the late cases to which we have called attention. The gift to the children of Mary W. Merriman vested on the death of the testator. The three then surviving took the estate. The estate being so vested in them, they necessarily took it as tenants in common or distributively.

It requires no citation of authority to show that where there is in a will a bequest to several children who become vested with the property on the death of the testator, said children *being thus vested* take distributively unless a contrary intent on the part of the testator appears in the will. No intent appears in the will under consideration that the children of Mary W. should take as a class or otherwise than distributively. (See *Matter of Seebeck, supra ; Bowditch* v. *Ayrault, supra ; Goebel et al.* v. *Wolf, supra.*)

The remaining question to be considered is as to the disposition of the income of the estate since the death of Mary W. Merriman and during the lifetime of the widow. The appellant Sharp claims that she was entitled to one-half of such income until the death of her brother, Howard L., and since his death to the whole. The administrator of Howard L. claims one-half of the income since the death of his mother.

If our views above expressed are correct, on the death of Abraham Wing the three children of Mary W. Merriman each became vested with an undivided third part of one-half of his residuary estate, the possession of which, by the provisions of the will, was postponed until the termination of the widowhood of Frances A. Wing and the life estate of their mother, and subject to the estate of the trustees for the period of the lives of said Frances A. and Mary W.

It is important to clearly understand what estate the testator gave to his grandchildren. The provisions of the will leave little doubt as to his intention in that regard. He declared it to be his intent and will that his grandchildren should have the principal of his estate absolutely for their own property, subject to the life estates. In other words, on his death this principal, from which the income was to be paid Mary W. Merriman during her life, was vested distributively in her three children, subject only to her life estate, or subject to the payment to her of the interest and income on the principal so vested in the grandchildren during her life, and subject to the estate of the trustees. On the payment of the income to Mary W. ceasing on account of her death, her several children, or their representatives or next of kin, being vested with the principal, in the language of the will, absolutely, for their own property, were and are as much entitled to the income accruing thereon as they will be on the death of the widow to the principal itself. They would each have been entitled to one-third of such income. from the time of the death of the testator had it not been for the provisions of the will giving such income to the mother during life. After she ceased to draw the income each of her children, or his or her representative, remained the absolute owner of one-third of the principal, subject to the trust estate and became entitled to one-third of the interest accruing on such principal.

We think it necessarily follows, from the conclusions above arrived at, that each of said grandchildren, being vested with one-third of the one-half part of the residuary estate left by the testator, subject to the trust estate and to the payment of interest thereon to Mary W. Merriman during her life, *on that payment ceasing*, being the absolute owner of such one-third, became entitled to the income derived therefrom; and that on the death of any one of such children his representative or next of kin succeeded to his rights. (See *Goebel et al.* v. *Wolf, supra.*)

It follows that the decree of the surrogate should be affirmed, with costs against the appellants.

HERRICK, J., concurred; MAYHAM, P. J., concurred in result.

Decree of surrogate affirmed, with costs.